UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AMANDA W.,[1]

                                    Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

DECISION & ORDER

22-CV-0286MWP

## PRELIMINARY STATEMENT

Plaintiff Amanda W. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Insurance Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 9).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 6, 7). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

### I.    Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.

Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*). The five steps are:

> (1)     whether the claimant is currently engaged in substantial
> gainful activity;
>
> (2)     if not, whether the claimant has any "severe impairment"
> that "significantly limits [the claimant's] physical or mental
> ability to do basic work activities";
>
> (3)     if so, whether any of the claimant's severe impairments
> meets or equals one of the impairments listed in Appendix
> 1 of Subpart P of Part 404 of the relevant regulations (the
> "Listings");
>
> (4)     if not, whether despite the claimant's severe impairments,
> the claimant retains the residual functional capacity
> [("RFC")] to perform [his or her] past work; and
>
> (5)     if not, whether the claimant retains the [RFC] to perform
> any other work that exists in significant numbers in the
> national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


II.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  (Tr. 19-29).[2]  Under step one of the process, the ALJ found that plaintiff had

engaged in work activity after December 22, 2009, the alleged onset date, but that the work did

not rise to the level of substantial gainful activity.  (Tr. 21).  At step two, the ALJ concluded that

plaintiff had the following severe impairments: degenerative disc disease of the cervical spine;

discoid lupus erythematous; bilateral carpal tunnel syndrome; bipolar disorder; and

post-traumatic stress disorder.  (Tr. 22).  At step three, the ALJ determined that plaintiff did not

have an impairment (or combination of impairments) that met or medically equaled one of the

listed impairments.  (Tr. 22-23).  With respect to plaintiff's mental limitations, the ALJ found

that she suffered from moderate difficulties in understanding, remembering, and applying

information; interacting with others; maintaining concentration, persistence, and pace; and, in

adapting and managing herself.  (*Id.*).

---

[2]  The administrative transcript (Docket # 4) shall be referred to as "Tr. ___," and references thereto utilize
the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff had the physical RFC to perform light work with several restrictions.[3]  (Tr. 23-27).  With respect to plaintiff's mental limitations, the ALJ found that she is limited to simple, routine tasks involving simple work-related decisions and occasional interaction with supervisors, coworkers, and the public.  (*Id.*).  At steps four and five, the ALJ determined that plaintiff could not perform her past relevant work but that positions existed in the national economy that plaintiff could perform, including small products assembler, electronics subassembler, and mail clerk.  (Tr. 27-29).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 29).

## III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination is not supported by substantial evidence and is the product of legal error.  (Docket # 6-1).  Plaintiff contends that the ALJ erred in evaluating the opinion submitted by her treating mental health counselor Maggen Daunce,[4] LMHC, by failing to adequately explain his assessment of the supportability and consistency of the opinion and by relying upon a mischaracterization of the evidence when assessing the opinion.  (*Id.* at 14-21).

## IV.   Analysis

Pursuant to the relevant regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those

---

[3]  Plaintiff's contentions relate only to the mental component of the ALJ's RFC determination. Therefore, I address only the mental portion of the RFC.  *See*, *e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

[4]  The ALJ and plaintiff refer to this therapist as Maggen "Daunee"; it appears that her correct name is Maggen Daunce.  (Tr. 588).

from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021).  "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'"  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

   According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14.  As to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the

more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(1),

416.920c(c)(1).  With regard to the "consistency" factor, the regulations state that "[t]he more

consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  *Id.* at

§§ 404.1520c(c)(2), 416.920c(c)(2).

"If the ALJ fails adequately to explain the supportability and consistency factors,

or bases [his or] her explanation upon a misreading of the record, remand is required."  *Rivera*,

2020 WL 8167136 at *14 (quotations omitted).  Accordingly, the ALJ is obligated to "provide

sufficient reasoning for th[e] [c]ourt to engage in meaningful appellate review," *Shirley C. v.

Comm'r, Soc. Sec. Admin.*, 2021 WL 3008265, *8 (D. Or. 2021), and to reach an RFC

determination "base[d] . . . [up]on all the evidence available in the record," *Velasquez v.

Kijakazi*, 2021 WL 4392986, *26 (S.D.N.Y. 2021) (internal citation and quotation omitted), and

based upon substantial evidence.  *See Amber H. v. Saul*, 2021 WL 2076219, *9 (N.D.N.Y. 2021)

("[o]n remand, the ALJ should specifically explain how he considered the supportability and

consistency factors as to each medical opinion per [20 C.F.R.] § 416.920c(b)(2), taking care to

support his evaluation with substantial evidence reflected in the longitudinal record").

Having reviewed the ALJ's decision, I agree with plaintiff that the ALJ failed to

adequately articulate his rationale for concluding that Daunce's opinion was not persuasive.  In

determining that Daunce's opinion was unpersuasive, the ALJ placed undue emphasis on

plaintiff's noncompliance with medication recommendations without properly considering or

evaluating plaintiff's explanation for her noncompliance.  (Tr. 27).

Although an ALJ may properly consider a claimant's noncompliance with

recommended treatment when evaluating the consistency of her subjective symptoms with the

overall record, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance.  *See* SSR 16-3p, 2017 WL 5180304, *9 (2017) ("[w]e will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of noncompliance] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); *Greene v. Berryhill*, 2018 WL 8646666, *8 (D. Conn. 2018) ("[b]efore drawing an inference, the ALJ must consider possible reasons he or she may not comply with treatment") (internal quotations omitted).

Here, the ALJ found that plaintiff's medically-determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 24).  Central to the ALJ's conclusion was plaintiff's failure to take medications as prescribed by her mental health provider. (Tr. 26-27).  Indeed, even in the context of the ALJ's remarkably brief discussion of plaintiff's mental health impairments, the ALJ repeatedly referred to plaintiff's noncompliance in evaluating her mental RFC.  (*Id.*).  For instance, in summarizing plaintiff's allegations concerning her mental impairments, the ALJ noted that she "failed to show for numerous counseling sessions . . . and has been resistant to medication suggestions from prescribers." (Tr. 26).  Similarly, in evaluating the persuasiveness of the medical source statement from Daunce, the ALJ again noted that plaintiff had "repeatedly rejected offers of medication." (Tr. 27).

A careful review of the record reveals that the ALJ apparently overlooked potential explanations for plaintiff's noncompliance with prescribed medications.  Specifically,

notes from plaintiff's consultation at Spine Surgery of Buffalo Niagara suggest that plaintiff was hesitant to take certain medications due to a family history of drug addiction. (Tr. 461). Other records reflect that plaintiff explained that she was reluctant to take medication to address her mental health impairments because she was concerned about potential side effects and/or did not want to introduce new medications while attempting to manage her recent lupus diagnosis. (*See*, *e.g.*, Tr. 475, 812). Indeed, several treatment notes in the record document that plaintiff was apprehensive about taking medications. (*See*, *e.g.*, Tr. 473, 657, 810).

The ALJ did not address plaintiff's concerns about potential drug interactions and side effects. Rather, he discounted plaintiff's complaints, as well as the limitations assessed by her treating mental health counselor, reasoning that they were inconsistent with plaintiff's "repeated[] reject[ion]" of medications recommended by her mental health providers. (Tr. 26-27). I find that the ALJ's failure to evaluate plaintiff's concerns about drug dependence stemming from her family history, as well as her concerns that introduction of new medications could interfere with her lupus treatment, constitutes error warranting remand. *See Sawicki v. Comm'r of Soc. Sec.*, 2023 WL 5164212, *9 (S.D.N.Y. 2023) ("[t]he text of the SSR 16-3p, its status as a binding agency ruling, as well as prior case law on this issue support the claim that the ALJ's failure to comply with SSR 16-3p constitutes legal error"); *Thomas S. v. Comm'r of Soc. Sec.*, 2022 WL 2974099, *3 (W.D.N.Y. 2022) (ALJ erred in discounting medical opinions of record based upon plaintiff's noncompliance; "the ALJ did not even consider the possibility that [plaintiff's] mental health issues might have been the reason that [plaintiff] missed appointments and failed to engage with his therapist"); *White v. Berryhill*, 2018 WL 2926284, *6 (D. Conn. 2018) ("an ALJ must consider the possible reasons a claimant has not adhered to treatment before weighing the claimant's noncompliance against his claim for benefits"); *see also Pabon v.*

9

*Colvin*, 2015 WL 5692845, *6 (W.D.N.Y. 2015) ("to the extent that there are periods of noncompliance in the record, the ALJ's reliance on them to find [p]laintiff's complaints not credible, without first inquiring into the reasons for any noncompliance, misapplies the proper legal standard"); *Chaussee v. Colvin*, 2015 WL 13729875, *7 (D. Conn. 2015) ("[t]o the extent the ALJ drew a negative inference from plaintiff's non-treatment or noncompliance, it was error to do so where it is not apparent the ALJ considered any explanation for this conduct"), *report and recommendation adopted by*, 2016 WL 1170915 (D. Conn. 2016).

Also troubling is the ALJ's observation, with little explanation, that plaintiff's mental health treatment was conservative; this cursory observation suggests that the ALJ may have overlooked or misapprehended the extent of the mental health treatment that plaintiff received during the relevant period. It is well-established that an ALJ must express the reasons underlying his findings with enough clarity to afford "meaningful judicial review." *Taylor v. Comm'r of Soc. Sec.*, 2015 WL 4649820, *9 (N.D.N.Y. 2015). To that end, an ALJ must avoid "rote analysis" and "conclusory explanations" and must discuss "the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, 2020 WL 2561106, *5 (N.D.N.Y. 2020) (internal ellipsis and quotation marks omitted). The ALJ's decision does not conform to these basic requirements.

Besides noncompliance with prescribed medication, the only other basis identified by the ALJ for finding Daunce's opinion unpersuasive was that the limitations assessed by Daunce were inconsistent with plaintiff's "minimal" or "conservative" mental health treatment. (Tr. 27). In characterizing the plaintiff's mental health treatment as "minimal" or "conservative," the ALJ failed to discuss any of plaintiff's treatment records or to acknowledge

the frequency with which she attended treatment, frustrating this Court's ability to determine whether the ALJ comprehended the extent of plaintiff's treatment history.

Indeed, the ALJ's decision suggests that he was unaware of the frequency with which plaintiff met with her mental health counselor and psychiatrist.  For instance, in addressing Daunce's opinion, the ALJ noted that Daunce failed "to report how often claimant is seen," although he acknowledged that her report indicated that plaintiff was recommended for weekly treatment.  (*Id.*).  Similarly, in discussing the opinion of the consultative psychologist, the ALJ noted that plaintiff reported attending counseling every two weeks with one provider and weekly with another.  (Tr. 26).  The ALJ suggested that plaintiff's weekly appointments related to substance dependence rather than her mental health.  (*Id.*).

To the contrary, the record demonstrates that plaintiff began receiving mental health treatment in June 2019, and in January 2020 plaintiff agreed with her counselor's recommendation to increase her treatment regimen to weekly mental health counseling sessions. (Tr. 473-80, 813).  After that time, plaintiff received mental health treatment on a weekly basis. (Tr. 810-58, 940-46).  The failure of the ALJ to discuss the majority of the medical evidence of plaintiff's mental health treatment frustrates any meaningful review of the ALJ's cursory rationale.  *See*, *e.g.*, *Elizabeth P. v. Comm'r of Soc. Sec.*, 2022 WL 507367, *6 (N.D.N.Y. 2022) (finding the ALJ's assessment that a doctor's opinion "was persuasive and consistent with the record as well as the examination findings" was cursory and insufficient to explain how she considered the supportability and consistency factors) (internal citations and quotations omitted); *Prieto v. Comm'r of Soc. Sec.*, 2021 WL 3475625, *13 (S.D.N.Y. 2021) ("rather than analyzing the supportability and consistency factors as applied to [the consultative] opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that [the consulting

physician's] opinion was 'supported by the medical evidence of record and by her underlying examination'[;] [s]uch a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand") (internal citations omitted); *Matthews v. Comm'r of Soc. Sec.*, 2018 WL 4356495, *3 (W.D.N.Y. 2018) ("[t]he ALJ's failure to explain his assessment of this portion of [the] opinion prevents the Court from meaningfully reviewing his decision, and warrants remand").

       Of course, an ALJ's failure to explicitly consider explanations for noncompliance may constitute harmless error under certain circumstances. *See Raymond Q. v. Saul*, 2019 WL 4758269, *6 (N.D.N.Y.) ("the ALJ's failure to consider plaintiff's explanation would be harmless error, as plaintiff's noncompliance was but one of several factors considered when assessing plaintiff's credibility") (brackets omitted), *report and recommendation adopted by*, 2019 WL 4757316 (N.D.N.Y. 2019).  Moreover, I agree with the Commissioner that plaintiff's ability to engage in significant and substantial activities of daily living during the relevant period appears to undercut her allegations of disability.  (*See* Docket # 7-1 at 14-16).  It is, however, well-settled that, although "the ALJ's decision need not mention every item of testimony presented . . . or reconcile explicitly every conflicting shred of medical testimony, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability."  *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (collecting cases) (quotations and brackets omitted).

       In this case, given the cursory nature of the ALJ's determination and the absence of any meaningful discussion or analysis of the plaintiff's mental health treatment history, this Court cannot be adequately assured that relevant evidence was not overlooked.  Additionally, the ALJ's repeated reference to plaintiff's failure to take recommended mental health medications, particularly given the brevity of the ALJ's discussion of plaintiff's mental impairments, strongly

suggests that her perceived noncompliance weighed heavily in the ALJ's determination.  Given

the apparent significance of plaintiff's noncompliance to the ALJ's disability determination, I

cannot conclude that the ALJ's failure to consider the potential explanations for plaintiff's

noncompliance was harmless.  Accordingly, remand is warranted.

## <u>CONCLUSION</u>

For the reasons stated above, the Commissioner's motion for judgment on the

pleadings **(Docket # 7)** is **DENIED**, and plaintiff's motion for judgment on the pleadings

**(Docket # 6)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      August 21, 2024